10771

STATE v. THOMPSON

(110 S. E. 133)

1. WITNESSES—LATITUDE ALLOWED IN CROSS-EXAMINATION TO TEST ACCURACY OF MEMORY, BIAS, OR CREDIBILITY OF WITNESS.—Considerable latitude is allowed in the cross-examination of a witness to test the accuracy of his memory, his bias, prejudice, interest, or credibility, but the restriction of the testimony is salutary, and much must be left to the sound discretion of the Judge, even where the matter appears to be relevant.

2. WITNESSES—EXTENT TO WHICH WITNESS MAY BE CROSS-EXAMINED TO TEST MEMORY, BIAS, INTEREST, OR CREDIBILITY.—In cross-examination of witness to test the accuracy of his memory, his bias, prejudice, interest, or credibility, the witness may be asked questions in reference to irrelevant matters or in reference to prior statements contradictory of his testimony, or in reference to statements as to irrelevant matters not contradictory of his testimony, but may not be impeached by contradictory witnesses as to prior contradictory statements as to collateral, irrelevant, or immaterial matters.

3. WITNESSES—CROSS-EXAMINATION AS TO WHETHER WITNESS HAD MADE STATEMENT TO NAMED PERSON AS TO STATEMENT OF DECEASED HELD IMPROPER.—In homicide prosecution, witness who accompanied deceased at time of killing could not be cross-examined as to whether he stated to named person that deceased had exonerated defendant from responsibility, with view of contradicting witness by the subsequent testimony of such person that the witness had in fact made the statement, where claimed statement by deceased to witness was not made as a dying declaration, and was not a part of the res gestae, since, even if relevant, it was not contradictory of any testimony that the witness had given, and the alleged statement of witness to such named person was not contradictory of any testimony witness had given.

4. CRIMINAL LAW—DECLARATION OF DECEASED INADMISSIBLE AS OPINION.—In a homicide prosecution, declaration of deceased that defendant was not to blame, not made as a dying declaration or as part of res gestae was at most an expression of opinion, and inadmissible.

Before RICE, J., Darlington, Fall term, 1920.  Affirmed.

Albert Thompson convicted of manslaughter and appeals.

*Mr: E. C. Dennis,* for appellant, cites: *Declaration, if not part of res gestae, may be admissible to contradict witness*: 7 Enc. Ev. 76; 37 S. C., 417; 34 S. C., 16. *Statement of deceased favorable to defendant admissible*: 4 Rich. L. 146.

*Mr. J. Monroe Spears, Solicitor,* for the State.

December 13, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The defendant was tried for the murder of one Norman Ervin, and was convicted of manslaughter.  The appeal involves only a question of evidence.

The deceased, with his stepfather, Richard Ervin, had gone at night to the home of a daughter of Richard Ervin, where it was alleged by the State the defendant was found in bed with the woman.  In a scuffle with the defendant as he emerged from the door, Norman Ervin was shot by the defendant.  He was taken to a hospital, where he died, and his body carried to Darlington, and thence to his brother's house.

While on the stand as a witness for the State, Richard Ervin was asked upon cross-examination by defendant's counsel if, on the Sunday afternoon when Norman's body was laid out in the house of Richard Ervin's son, he (Richard) had not told Allen Thompson, an uncle of the defendant, that Norman had said not to do anything with Albert Thompson, because he (Norman) was to blame.  No circumstances were detailed showing that this alleged statement of Norman was either a dying declaration or a part of the res gestae.  The witness denied making the statement.  The defendant then offered to contradict him by Allen Thompson, the party to whom the alleged statement was made.  The presiding Judge ruled the testimony inad-

missible, and his ruling is made the ground of the first exception.

The admissibility of the testimony depends upon the relevancy of the alleged exculpatory statement of the deceased.

1, 2    Considerable latitude is allowed in the cross-examination of a witness (always within the control and direction of the presiding Judge) to test the accuracy of his memory, his bias, prejudice, interest, or credibility. In doing so the witness may be asked questions in reference to irrelevant matter, or in reference to prior statements contradictory of his testimony, or in reference to statements as to relevant matter not contradictory of his testimony. It does not follow, however, that the witness may be impeached by contradictory witnesses to the same extent that the interrogation may be permitted.

As to questions in reference to irrelevant matter the rule is thus stated in *Jones v. McNeill,* 2 Bail. (S. C.) 466:

"Irrelevant questions may be put to a witness on his cross-examination, with the view of obtaining from him contradictory or inconsistent answers, and of thus impeaching and destroying his credit; but they cannot be asked with a view of calling other witnesses to contradict his answers."

As to questions and contradicting testimony in reference to prior statements contradictory to his testimony on the trial, the rule is thus expressed in *State v. Sullivan,* 43 S. C., 210; 21 S. E., 7 (quoting from Greenleaf):

"The credit of a witness may also be impeached by proof that he has made statements out of Court contrary to what he has testified at the trial. But it is only in such matters as are relevant to the issue that the witness can be contradicted."

"It is not permissible to impeach a witness by showing that he has made prior contradictory statements as to collateral, irrelevant, or immaterial matters; and the test is whether, if the matter alleged to have been stated by the

13—S. C. 118

witness out of Court were true, the party seeking to im-
peach the witness would be entitled to prove such matter in
support of his case." 40 Cyc., 2699.

As to statements in reference to relevant matters not con-
tradictory of his testimony:

As to those it would appear that he may be questioned
and contradicted by another witness when the proper foun-
dation shall have been laid.

The suggested statement as coming from Norman
Ervin, the deceased, was not at all contradictory
of any testimony which Richard had given; neither
was the alleged statement of Richard that Norman had so
stated. Hence the testimony was not admissible as a state-
ment contradictory of Richard's testimony, even if the so-
called statement of Norman were relevant testimony. The
only effect it could have had, if relevant, was to create an
inference inconsistent perhaps with the inference deducible
from Richard's testimony; but it was in no sense a statement
of Richard contradictory of his testimony.

Under the case of *State v. Taylor*, 56 S. C., 360;
34 S. E., 939, the alleged declaration of Norman
could not have been introduced in evidence, and was
therefore irrelevant. In that case it was proposed to prove
a declaration by the deceased contradictory of the dying
declaration in evidence, which contradictory statement was
of course exculpatory of the defendant. The Court ruled
against its admissibility upon the ground that it was neither
a dying declaration not a part of the res gestae.

At most the alleged declaration of Norman was the mere
expression of an opinion.

"Thus the mere expression of an opinion that the de-
ceased was not at fault or of a desire that he should not
be prosecuted cannot be received in evidence." 21 Cyc.,
988.

The restriction of the testimony is salutary, and much
must be left to the sound discretion of the Judge even where

the matter appears to be relevant. If it is irrelevant the contradiction tends to create an issue collateral in its nature. If it is relevant apparently, the presiding Judge should have the discretion to exclude the testimony where it would appear practically impossible for the jury to confine their consideration of it to purposes of impeachment, and not unconsciously treat it as substantive evidence.

The other exception presents a similar question, and is controlled by the disposition of the first.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.