523 S.E.2d 187

**The STATE, Respondent,**

v.

**Angel SIERRA, Appellant.**

**No. 3052.**

Court of Appeals of South Carolina.

Heard June 9, 1999.
Decided Oct. 4, 1999.
Rehearing Denied Nov. 17, 1999.

---

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Caroline Callison Tiffin, all of Columbia; and Solicitor George M. Ducworth, of Anderson, for respondent.

HOWARD, Judge:

Angel Sierra was convicted by a jury of trafficking in marijuana. Sierra appeals his conviction, arguing the trial judge committed reversible error by allowing the assistant solicitor to impeach a defense witness during cross-examination with a prior inconsistent statement allegedly made to the assistant solicitor. We reverse and remand for a new trial.

## FACTS/PROCEDURAL BACKGROUND

On April 29, 1997, Sierra and a co-defendant, Jaime Savceda, were stopped by a sheriff's deputy on I–85 for making an improper lane change. During the traffic stop, Sierra consented to a search of the trunk, which led to the discovery of fourteen and one-half pounds of marijuana packaged in plastic bags.

Savceda and Sierra were arrested and indicted for trafficking in marijuana. They received a joint trial beginning January 5, 1998. At the close of the State's case, Savceda pleaded guilty. Sierra then called Savceda as his witness. Savceda testified on direct examination that the marijuana belonged to him, and Sierra knew nothing about it. On cross-examination, the assistant solicitor attempted to impeach Savceda with inconsistent statements he allegedly made to her in a pretrial meeting between counsel, which Savceda attended. This cross-examination culminated in the following exchange:

Q. [assistant solicitor] And when I said the drugs were found in the trunk you said—

*Defense Counsel:* Objection, your honor. If she wants to submit herself as a witness, that's fine with me, but if she's going to testify as to what she was told, she needs to be sworn.

*The Court:* No, sir. Overruled. Go ahead.

Q. And you said, "It wasn't mine. It belonged to the other guy."

In response, Savceda denied the statement, and remained steadfast in his testimony that the marijuana belonged to him. The assistant solicitor did not attempt to withdraw in order to testify under oath about the alleged prior inconsistent statement, and no independent evidence was presented to establish it. Notwithstanding this failure of proof, the solicitor argued her version of the prior conversation to the jury in her closing argument. The jury found Sierra guilty as charged. This appeal follows.

## LAW/ANALYSIS

Sierra argues the trial court erred by overruling his objection to the assistant solicitor's cross-examination because by posing the question the assistant solicitor essentially testified before the jury as to the content of the prior inconsistent statement without being sworn or subjected to cross-examination.

Preliminarily, we note that Savceda testified only after he had entered his plea of guilty to the charge. Thus, he was no longer a co-defendant. He testified through an interpreter, and maintained that he did not understand English well enough to answer questions without one. He consistently stated that he was responsible for the marijuana, and Sierra had no knowledge of it. Savceda did not deny being present during the pre-trial meeting with the assistant solicitor, but he stated that no interpreter was present and he did not adequately understand the conversation. The assistant solicitor contested Savceda's need for an interpreter throughout cross-examination and in closing argument. Sierra's lack of knowledge of the marijuana was his defense, and the credibility of Savceda's testimony was unquestionably important to the case.

Rule 613(b), SCRE, is the general rule for impeachment by a prior inconsistent statement and requires laying the foundation for the question by advising the witness of the substance of the prior inconsistent statement, the time and place it was given, and the person to whom it was made.[1] Only if the

---

1. RULE 613. PRIOR STATEMENTS OF WITNESSES, reads in applicable part:

(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is

witness denies having made the prior inconsistent statement is extrinsic evidence admissible. With this requirement, the witness is presented with sufficient information to admit the prior statement, deny it, or explain it. *See State v. Hampton,* 79 S.C. 179, 60 S.E. 669 (1908).

Where the prior inconsistent statement was allegedly made to the cross-examiner, there is a danger of harm inherent in "laying the foundation." By posing the question the cross-examiner necessarily publishes his or her version of the prior inconsistent statement, with the natural result of pitting the cross-examiner's memory and credibility against that of the witness. This procedure also implicates the cross-examiner as a witness because, absent written or recorded statements, the natural source of the extrinsic proof of the prior inconsistent statement contemplated by Rule 613 is the testimony of the person to whom it was made.

■ Our courts have consistently held that the scope and extent of cross-examination is a matter within the sound discretion of the trial judge. *State v. Sherard,* 303 S.C. 172, 399 S.E.2d 595 (1991); *State v. Colf,* 332 S.C. 313, 504 S.E.2d 360 (Ct.App.1998). This court will not disturb the trial judge's decision unless appellant shows both prejudice and an abuse of discretion. *Id.* (showing of prejudice required); *State v. Sprouse,* 325 S.C. 275, 478 S.E.2d 871 (Ct.App.1996) (showing of manifest abuse of discretion required); *State v. Hale,* 284 S.C. 348, 326 S.E.2d 418 (Ct.App.1985) (A case may be reversed on the ground that the trial judge permitted leading questions only if there has been a clear abuse of discretion resulting in prejudice to the objecting party.).

■ Historically, it has been the rule in South Carolina that:

not admissible unless the witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it was made, and is given the opportunity to explain or deny the statement. If a witness does not admit that he has made the prior inconsistent statement, extrinsic evidence of such statement is admissible. However, if a witness admits making the prior statement, extrinsic evidence that the prior statement was made is inadmissible. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

[t]he cross-examination of a witness to test his credibility is largely within the discretion of the trial judge.... 'Considerable latitude is allowed in the cross-examination of a witness (always within the control and direction of the presiding judge) to test the accuracy of his memory, his bias, prejudice, interest, or credibility. In doing so the witness may be asked questions in reference to irrelevant matter, or in reference to prior statements contradictory of his testimony, or in reference to statements as to relevant matter not contradictory of his testimony.'

*McMillan v. Ridges*, 229 S.C. 76, 80–81, 91 S.E.2d 883, 885 (1956) (citation omitted).

■ Though it is proper to elicit testimony by leading questions on cross-examination, it is generally recognized as improper for the cross-examiner to testify by making statements of fact. *See State v. Pee Dee News Co.*, 286 S.C. 562, 336 S.E.2d 8 (1985) (prosecutorial misconduct denied defendant a fair trial where prosecutor exceeded permissible latitude in cross-examination by repeatedly employing hypothetical question without factual basis in record either at time of asking or at close of evidence); *State v. Reed*, 259 S.C. 392, 192 S.E.2d 207 (1972); *State v. Outen*, 237 S.C. 514, 526, 118 S.E.2d 175, 182 (1961) ("Such cross-examination is subject to the discretionary control of the trial [j]udge who should restrain its abuse. The cross-examiner must be fair and act in good faith. The matters inquired about should not be merely chimerical, or drawn from the vivid imagination of opposing counsel, but the inquiry should be directed only to those matters concerning which the cross-examiner has information warranting a reasonable belief on his part that the fact is as is implied by the question." (citation omitted)). *See also Self v. Dye*, 257 Ark. 360, 516 S.W.2d 397, 400 (1974) ("[C]ross-examiner may be restricted in posing argumentative questions or addressing a question to a witness that erroneously assumes that a material fact has been proved or that the witness has testified to such facts on direct examination. The right to ask leading questions does not license the examiner to testify, in effect, by making statements of fact."); *People v. Johnson*, 121 Cal.App.3d 94, 175 Cal.Rptr. 8 (1981); *People v. Mangine*, 73 A.D.2d 816, 424 N.Y.S.2d 75, 75 (1979) ("The prosecutor improperly made himself an unsworn witness when he endeav-

ored to impeach defendant's alibi witness by asking him on cross-examination about prior inconsistent statements that the witness made to the prosecutor in a telephone conversation."); *State v. DePriest*, 697 S.W.2d 597, 600 (Tenn.Crim.App.1985) ("Leading questions are permissible in cross-examination but the examiner is not allowed to testify or introduce evidence.").

In this regard, our supreme court recognized long ago that prejudice may result from the question, irrespective of the answer. In *Entzminger v. Seigler*, the court noted "[t]he probable and, no doubt, logical result of improper questioning is to give the jury the impression that the facts assumed actually exist, and that the reason why the opposite party objects to the questions is that he is trying to keep such facts from the jury." 186 S.C. 194, 195 S.E. 244, 246 (1938). *See also State v. Pee Dee News Co.*, 286 S.C. 562, 336 S.E.2d 8 (1985).

Rule 613 allows a question to be posed which asserts an inconsistent prior statement even though there is no basis for it in the record at the time of the asking, and the rule provides for extrinsic proof of the inconsistent statement in the event the witness denies it. The rule does not explicitly require extrinsic proof of the prior inconsistent statement in the event of denial by the witness. However, there are cases from other jurisdictions concluding that the failure to introduce extrinsic evidence of the alleged prior inconsistent statement after it has been published in cross-examination to the jury and denied by the witness can be reversible error in a criminal case because it denies the defendant the right of confrontation. *See United States v. Silverstein*, 737 F.2d 864, 868 (10th Cir.1984) ("[A] prosecutor may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable."); *United States v. Bohle*, 445 F.2d 54, 74 (7th Cir.1971) ("the duty to follow up foundation with evidence is breached at the risk of reversal of any tainted victory"); *State v. Amos*, 490 S.W.2d 328 (Mo.Ct.App.1972); *State v. Babich*, 68 Wash.App. 438, 842 P.2d 1053 (1993) (The prosecutor's failure to introduce extrinsic evidence to prove alleged prior inconsistent statements in order to rebut defense witnesses' denials of making statements constituted reversible error of constitutional magnitude, in violation of the defendant's Sixth Amendment right of confrontation).

When the prior inconsistent statement was allegedly made to the prosecuting attorney, the availability of extrinsic evidence to establish the statement is directly linked to the ability of the prosecuting attorney to appear as a witness in the trial. Our research indicates no absolute prohibition against a prosecuting attorney becoming a witness for the State. *See* 81 Am Jur 2d § 229 *Witnesses* (1992). However, it is certainly disfavored, as our supreme court noted in *State v. Lee*, 203. S.C. 536, 28 S.E.2d 402, 404 (1943) ("The courts clearly look with disfavor upon a prosecuting attorney's participation in a case as a witness for the State except under unavoidable circumstances."). The solicitor is an officer of the court, who undertakes a more active role in the courtroom than that of a witness. The solicitor interacts throughout the trial with opposing counsel, witnesses and the court, continuing to impose his or her presence upon the jury. The court accords the solicitor and other participating counsel certain deference out of respect for their role as officers of the court. In short, "[t]he justified reluctance of courts to permit the prosecutor to become a witness in the case reflects the belief that the jury will accord far greater weight to [his or her] testimony than to that of an ordinary witness, by virtue of the prosecutor's personal prestige and official status." *People v. Langdon*, 91 Ill.App.3d 1050, 47 Ill.Dec. 573, 415 N.E.2d 578, 583 (1980).

This pitfall is reflected in Rule 3.7 of the Rules of Professional Conduct, which reads as follows:

RULE 3.7 LAWYER AS WITNESS

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case; or

(3) Disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a

witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Rule 407, SCACR.

Of particular significance is the comment to Rule 3.7, which notes that:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Rule 407, SCACR.

The difficulty of differentiating whether a statement "by an advocate-witness should be taken as proof or as an analysis of the proof," as noted in the above quoted comments to Rule 3.7, is illustrated by what occurred in this case. Though the witness denied the inconsistent statements, the solicitor argued her version of the statements as facts to the jury in her closing argument, as if her version was supported by evidence. Blurring the lines between attorney and witness during cross-examination set the stage for this improper closing argument. The closing argument, standing alone, would have been grounds for reversal if it had been properly preserved by objection. *See State v. Coleman,* 301 S.C. 57, 61, 389 S.E.2d 659, 661 (1990) ("the jury ... was effectively presented with testimony from the solicitor as if he had taken the stand himself.").

We are sympathetic to the predicament confronting the assistant solicitor when Sierra's co-defendant pleaded guilty during trial and for the first time claimed responsibility for the marijuana. Until that occurrence, she could not reasonably have anticipated that she could become a witness in the case. The dilemma was all the more difficult because, as the record reflects, she had no co-counsel involved in the trial who could take over the prosecution and allow her to withdraw in order to be a witness. *See People v. Langdon,* 91 Ill.App.3d 1050, 47 Ill.Dec. 573, 415 N.E.2d 578, 583 (1980) (no prejudicial error shown where prosecuting attorney became witness in rebuttal, but court restricted closing argument so that co-

counsel gave closing argument on those factual issues presented by prosecuting attorney's °testimony). However, under these circumstances we conclude the unavailability of extrinsic evidence to establish the alleged prior inconsistent statement was readily ascertainable at the time the offending questions were asked on cross-examination. Allowing the questions posed by the assistant solicitor interjected facts in a manner which did not allow for cross-examination to test their credibility. Consequently, the trial judge erred in overruling the objection.

■ Generally, the right to cross-examine a prosecuting witness is of constitutional dimensions, being essential to a fair trial as guaranteed by the Sixth Amendment and the due process clause of the Fourteenth Amendment. *State v. McCoy*, 274 S.C. 70, 261 S.E.2d 159 (1979); *see also State v. Graham*, 314 S.C. 383, 444 S.E.2d 525 (1994) (The right to meaningful cross-examination of adverse witnesses is specifically included in a defendant's Sixth Amendment right to confront witnesses.); *accord State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994).

The only reference in the record indicating Savceda ever denied the marijuana belonged to him was contained in the solicitor's questions during her cross-examination of Savceda and in her closing argument. Although Savceda denied the statements, we conclude the cross-examination allowed an unfair assault upon the credibility of his denial on this most critical issue, in violation of Sierra's Sixth and Fourteenth Amendment right of confrontation. *See State v. Mitchell*, 330 S.C. 189, 196, 498 S.E.2d 642, 645–46 (1998) ("As a general rule, a trial court's ruling on the proper scope of cross-examination will not be disturbed absent a manifest abuse of discretion. This rule is subject, however, to the Sixth Amendment's guarantee of a defendant's right to a 'meaningful' cross-examination. [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which the jurors ... could appropriately draw inferences relating to the reliability of the witness.' ").

Accordingly, we conclude the trial court erred in allowing the assistant solicitor to exceed the permissible latitude accorded in cross-examination by publishing allegedly first hand knowledge of prior inconsistent statements, when there was no factual basis for the assertions in the record at the time of the asking, and no extrinsic evidence available to prove them in the event of denial. *See State v. Pee Dee News Co.*, 286 S.C. 562, 336 S.E.2d 8 (1985); *see also United States v. Silverstein*, 737 F.2d 864, 868 (10th Cir.1984) ("Although a prosecutor may impeach a witness on the basis of prior inconsistent statements ... a prosecutor may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable.").

The respondent argues that the cross-examination was proper under the authority of *State v. Reed*, 259 S.C. 392, 192 S.E.2d 207 (1972). We disagree. In *Reed* our supreme court found no reversible error where a solicitor attempted to refresh a prosecution witness's memory by asking the witness, "But last night you said _ _." *Reed*, 259 S.C. at 396, 192 S.E.2d at 208. However, this case is distinguishable from *Reed* for at least two reasons. First, *Reed* involved a different objection. Prior to our adoption of Rule 607, SCRE, the party who called a witness was said to vouch for the witness's credibility, and it was improper to impeach one's own witness unless the witness was first declared hostile. *State v. Anderson*, 304 S.C. 551, 406 S.E.2d 152 (1991). The objection in *Reed* was that the State was improperly attempting to impeach its own witness. Second, the solicitor in Reed abandoned the question before stating it, and did not attempt to so question the witness again. Therefore, the solicitor never published his version of the prior statement to the jury.

Concluding the allowance of the offending questions was error, we must now determine if the error was harmless. The violation of the Sixth Amendment right to confrontation is not per se reversible error, but depends upon a host of factors. "These factors include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradicting testimony by the witness, the extent of cross-examination otherwise permitted, as well as the overall strength of the prosecution's case." *Delaware v. Van Arsdall*,

475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *State v. Smith,* 315 S.C. 547, 446 S.E.2d 411 (1994); *State v. Graham,* 314 S.C. 383, 444 S.E.2d 525 (1994).

The alleged prior inconsistent statements directly controverted the testimony of the defense witness on the critical issue of knowledge and possession of the marijuana. The State's case against Sierra was otherwise circumstantial, depending in large part upon the jury's interpretation of Sierra's role as driver of the car, the significance of a large number of air fresheners hanging in the car, and the credibility of Sierra's description of his trip itinerary in light of the lack of clothing and normal travel gear found in the car. We conclude the credibility of Savceda's testimony accepting sole responsibility for the marijuana was crucial. There was no other evidence offered to dispute Savceda's testimony. Under these circumstances, the error was not harmless.

## CONCLUSION

For the reasons discussed above, Sierra's conviction for trafficking in marijuana is reversed and this case is remanded for a new trial.

**REVERSED AND REMANDED.**

HOWELL, C.J., and HUFF, J., concur.